GEORGE WILLIAMS v. THE STATE.

No. 2296.  Decided March 6, 1901.

First Motion for Rehearing Decided March 20, 1901.

Second Motion for Rehearing Decided April 24, 1901.

1.  Improper Admission of Evidence—Bill of Exceptions—Practice.

If a bill of exceptions be not reserved to the improper admission of testimony, the court, on appeal, will not consider the assignments of error in relation thereto.

2.  Improper Argument—Bill of Exceptions—Practice on Appeal.

Unless a bill of exceptions was reserved at the time to improper remarks of the prosecuting attorney, objections to same will not be noticed on appeal.

ON FIRST MOTION FOR REHEARING.

3.  Burglary of Private Residence—Indictment.

Conviction for burglary of a private residence can not be sustained under an indictment, in ordinary form, charging burglary of a house.  Following Osborne v. State, ante, p. 557.

ON SECOND MOTION FOR REHEARING.

4.  Burglary of Private Residence—Construction of Statute.

A daytime burglary of a private residence is not affected by the new statute (Acts Twenty-sixth Legislature, page 318) with regard to burglary by adding articles 839a and 845a, and making burglary of a private residence a distinct offense, and which refers and limits such offenses to a nighttime burglary; or, if a daytime burglary, to the entry of such residence in the daytime and remaining concealed therein until night with intent to commit a felony, or the crime of theft.

5.  Same.

A daytime burglary of a private residence is not affected by the naw statute (Acts Twenty-sixth Legislature, page 318), but is left an offense under article 838, Penal Code, as simply the burglary of a house.  Overruling Osborne v. State, ante, p. 557.

APPEAL from the District Court of Tarrant.  Tried below before Hon. W. D. HARRIS.

Appeal from a conviction of burglary; penalty, twelve years imprisonment in the penitentiary.

The indictment was in the ordinary form for burglary of a house owned and occupied by John Wurnet, on the 24th of July, 1900, with intent on the part of appellant to commit theft of property in said house.  The facts are stated in the testimony of the prosecuting witness, John Wurnet, as follows: "I live three miles northeast of the city of Fort Worth, Tarrant County, Texas.  I know the defendant. I saw him at my place on the 5th day of July, 1900.  I heard my dog

bark and went to the door and the defendant and Charlie Adams were standing about three feet from the door. I asked them what they wanted; they said they wanted a drink of water. I told them to go around back of the house to the well and get the water. The defendant went to the well after the water, but Charlie Adams stayed at the door and talked to me. I was standing just inside the door with one of my hands on the door-facing; the door was almost half open; when the defendant came back from the well he walked up by Charlie Adams, gave him a sign, and Adams pulled a pistol out of his pocket, pointed it at me and told me to tell him where I kept my money. I told him that I did not have any money. Then the defendant struck me over the head with a slingshot; it looked like a handkerchief with a rock tied up in one corner. The blow rendered me unconscious, so I did not know anything until I came to my senses again. When I came to, I saw the defendant and Charlie Adams in the front room of my house. The door, through which I saw the defendant and Charlie Adams, was standing open. I believe that the screen was shut; this was the door leading from the hallway into the front room. I know that the door was locked when I was assaulted. I had locked it about two hours before and had put the key in my pocket. The key was in my pocket when I was struck by the defendant. When I came to, the defendant and Charlie Adams were in the front room and were fumbling around among something. When I came to, I ran out of the house and left defendant and Charlie Adams in the room, as I have already said. I was afraid that if they discovered that I was not dead they would finish the job. I went to Mr. Leak's house. I was struck eight times on the head and one time on the middle finger of the left hand. I did not give my consent to the defendant or Charlie Adams to enter my house. This all occurred in Tarrant County, Texas. I was standing just inside the door and leaning on the door-facing when the defendant struck me. The door was about half open; the defendant was standing just outside of the door at the time. I fell on the floor in the hallway; there was but on door into the front room that opened from the hallway; there was an inside door. I know the door was locked, because I always keep it locked, because our house had been broken into five or six times, and I kept this room locked because there were things in it that we did not want stolen. This was the only room we kept locked. There was no money in that room on this day; there was eight dollars in a chest in the hallway. It was about 8 o'clock, or five minutes after 8, when I was assaulted. I know the time, because the town clock in Fort Worth had just struck 8, and had set my clock by it. I know the defendant, because I saw him the day of the assault, and I saw him one week before. I noticed him carefully both times; on Wednesday, one week before the assault, the defendant and Charlie Adams were at my place. They got a drink of water and asked me several questions about the place; among them they asked me who owned the place and who owned the garden. I told them that

I owned them both. I am a gardener by occupation. It was about 8 o'clock in the morning the first time they were there. No one was with me the morning I was assaulted, after my wife left for market, until the defendant and Charlie Adams came. When I came to, after being knocked down, the key which I had put in my pocket was gone and the door leading into the large room from the hall was open. I am about sixty-five years old and have lived at that place and run truck farm or garden for several years."

No further statement necessary.

*Cummings & Baskin,* for appellant, filed an able brief on the merits, and also a brief on their motion for rehearing, as follows: The indictment in this case is insufficient to charge the offense of burglary of a private residence in that it fails to allege that the house of John Wurnet was a private residence. The Act of the Twenty-sixth Legislature, page 318, amends chapter 6, title 17, of the Penal Code, and makes the offense of burglary of a private residence a separate and distinct offense. This act went into effect August 27, 1899, and this offense is shown to have been committed July 5, 1900. Article 845b of said acts says: "Nothing in articles 839a and 845b of this chapter shall be construed to alter or in any manner repeal articles 838 and 839 of this chapter, nor any part thereof, but shall be construed to make burglary of a private residence at night a separate and distinct offense," etc.

The indictment in this case charges that appellant did then and there by force, threats and fraud break and enter a certain house there situated. To be sufficient under the proof in this case, it should have stated that said house was a private residence, and should have further stated whether the same was done in day or night. The court erred in its charge to the jury with reference to the punishment, its charge being substantially as follows: "If you find the defendant guilty you will assess his punishment at confinement in the penitentiary for some term not less than two nor more than twelve years."

Article 845a, Acts of the Twenty-sixth Legislature, page 318, provides: "The punishment for burglary of a private residence shall be by imprisonment in the penitentiary for any term of years not less than five." The testimony of John Wurnet, as quoted in the opinion of the court and as shown in the transcript, pages 4 and 5, shows unquestionably that this was the private residence of said Wurnet. It is fundamental error for the court to incorrectly state the punishment and can not be waived and will require a reversal, although it may inure to the benefit of appellant. Wills. Crim. Stats., art. 716, note 15, and authorities there cited; Buford v. State, 44 Texas, 525; Searcy v. State, 1 Texas Crim. App., 514; Garnett v. State, Id., 605; Robinson v. State, 2 Texas Crim. App., 390; Hamilton v. State, Id., 494; Collins v. State, 5 Texas Crim. App., 38; Jones v. State, 7 Texas Crim. App., 338; Allen v. State, Id., 298; Veal v. State, 8 Texas

Crim. App., 474; Spears v. State, Id., 467; Rodriguez v. State, Id., 129; Bouldin v. State, Id., 624; Wilson v. State, 14 Texas Crim. App., 524; Turner v. State, 17 Texas Crim. App., 587; Howard v. State, 18 Texas Crim. App., 348; Gardenhire v. State, Id., 565; Cohen v. State, 11 Texas Crim. App., 337; Bostick v. State, 22 Texas Crim. App., 136, 2 S. W. Rep., 538; Wright v. State, 23 Texas Crim. App., 313, 5 S. W. Rep., 117; Myers v. State, 9 Texas Crim. App., 157; Key v. State, 12 Texas Crim. App., 506.

*O. S. Lattimore,* County Attorney of Tarrant County, and *Rob't A. John,* Assistant Attorney-General, for the State, on the State's motion for a rehearing.—Comes now the State of Texas and moves the court to grant a rehearing herein and to set aside the order and judgment reversing this cause heretofore made on March 20, 1901, and to affirm the above cause for the following reasons, to wit: The court erred in holding that under the facts of this case it constituted "burglary of a private residence," as defined and punished in articles 839a and 845a, Acts of 1899.

This was a daytime burglary—an examination of the statement of facts leaves no doubt of this proposition. Burglary of a private residence, as created and defined by the last Legislature, is expressly, as stated in article 845b, not to interfere with prosecutions for daytime burglaries under articles 838 and 839 of the existing Code. These three new articles, 839a, 845a and 845b, taken together, leave it clear that a daytime burglary of a private residence should be alleged and proven and prosecuted under articles 838 and 839, else we are now without power to prosecute a daytime burglary of a private residence, for the new articles are wholly confined to nighttime entries and concealment till night.

If this appellant had been indicted under article 839a, the allegation would not have been met by the proof, and a conviction could not stand. The proof herein showed beyond a shadow of doubt that the burglary was committed just after 8 o'clock a. m. The owner of the house burglarized testifies to hearing the town clock strike eight before the assault and burglary. We respectfully submit that in some way the court has overlooked these facts and the further fact that this case could only be prosecuted successfully under the allegations of the indictment now before the court, and that this cause ought to be affirmed.

HENDERSON, JUDGE.—Appellant was convicted of burglary, and his punishment assessed at confinement in the penitentiary for a term of twelve years, hence this appeal.

There is no bill of exceptions in the record, consequently we can not notice the assignments with reference to the improper admission of testimony regarding an assault alleged to have been made at the same time the burglary was committed. However, if there had been an exception to this testimony, it was admissible as a part of the res

gestae. There was no error in the court's charge in failing to limit the effect and purpose of the testimony regarding the assault. The charge did limit the purpose for which this testimony was admitted; and we think properly. There is no bill with regard to the remarks of the County Attorney, hence the same can not be noticed. There being no error in the record, the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HENDERSON, Judge.—This case was affirmed at a previous day of this term, and now comes before us on motion for rehearing. The indictment is in the ordinary form, charging burglary of a house. The proof, however, shows that it was a private residence, and under the authority of Brit Osborne v. State, ante, page 557, the conviction can not be sustained under this indictment. The motion for rehearing is accordingly granted, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

April 24, 1901.

HENDERSON, Judge.—This case was affirmed at the Dallas term, and, on appellant's motion for rehearing, the same was granted and the judgment reversed and the cause remanded. The decision was predicated on the construction of the amendment of 1899 to our statutes on burglary. See Acts 26th Leg., 318. We held, following Osborne v. State, ante, page 557, that said amendment made burglary of a private residence a distinct offense, and that the indictment was defective in failing to make the allegations required in the amendment. In deciding this case, on motion for rehearing, our attention was not called to the facts showing that it was a daytime burglary, nor the peculiarities of the amended statute, and consequently we overlooked the fact that the amendment relating to the burglary of a private residence by force, threats or fraud, refers to a nighttime burglary, or if a daytime burglary, entering a private residence and remaining concealed therein until night, with intent in either case of committing a felony or the crime of theft. The Assistant Attorney-General in the present motion for rehearing has called our attention to the terms of the statute as above suggested, and insists that the facts here show a daytime burglary of a private residence, and that the amendment in question does not apply to this character of case. An examination of the record bears out the contention of the State in this regard, and we accordingly hold that the facts here shown do not come within the purview of the amended act, as the burglary of a private residence in the nighttime. The daytime burglary of a private residence is not

affected by the new statute, but is left as an offense under article 838, Penal Code, as simply the burglary of a house. The indictment is a good indictment for the burglary of a house, although a private residence, in the daytime. We accordingly overrule the case of Osborne v. State, supra, and the cases which may have followed that. State's motion for rehearing is granted; and the former order reversing the judgment and remanding the cause is set aside, and the judgment is affirmed in accordance with this and the original opinion.

*Affirmed.*